GEORGE E. COLE®  
LEGAL FORMS  
No. 9-REC  
April 2000

## STORE LEASE

CAUTION: Consult a lawyer before using or acting under this form. Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.



EXHIBIT "B"

| TERM OF LEASE | |
|---|---|
| BEGINNING | ENDING |
| 1 Oct 02 | 30 Sep 07 |

Above Space for Recorder's use only

| MONTHLY RENT | DATE OF LEASE | LOCATION OF PREMISES |
|---|---|---|
| 20,000.00 | September 1997 | 5700 N. Central Avenue Chicago Illinois 60646 |

**PURPOSE**

Bank headquarters providing general commercial banking services

The monthly rental shall provide for an annual 3% increase.

| | LESSEE | | LESSOR |
|---|---|---|---|
| NAME | * Citizen's Bank & Trust | NAME | * Robert C. Michael & George S. Michael |
| ADDRESS | * 5700 N. Central | ADDRESS | |
| CITY | * Chicago, Il. 60646 | CITY | * 5680 N. Elston Avenue Chicago, Il. 60646 |

In consideration of the mutual covenants and agreements herein stated, Lessor hereby leases to Lessee and Lessee hereby leases from Lessor solely for the above purpose the premises designated above (the "Premises"), together with the appurtenances thereto, for the above Term.

### LEASE COVENANTS AND AGREEMENTS

1. RENT. Lessee shall pay Lessor or Lessor's agent as rent for the Premises the sum stated above, monthly in advance, until termination of this lease, at Lessor's address stated above or such other address as Lessor may designate in writing.

2. WATER, GAS AND ELECTRIC CHARGES. Lessee will pay, in addition to the rent above specified, all water rents, gas and electric light and power bills taxed, levied or charged on the Premises, for and during the time for which this lease is granted and in case said water rents and bills for gas, electric light and power shall not be paid when due, Lessor shall have the right to pay the

same, which amounts so paid, together with any sums paid by Lessor to keep the Premises in a clean and healthy condition, as herein specified, are declared to be so much additional rent and payable with the installment of rent next due thereafter.

3. SUBLETTING; ASSIGNMENT. The Premises shall not be sublet in whole or in part to any person other than Lessee, and Lessee shall not assign this lease without, in each case, the consent in writing of Lessor first had and obtained; nor permit to take place by any act or default of himself or any person within his control any transfer by operation of law of Lessee's interest created hereby; nor offer for lease or sublease the Premises, nor any portion thereof, by placing notices or signs of "To Let," or any other similar sign or notice in any place, nor by advertising the same in any newspaper or place or manner whatsoever without, in each case, the consent in writing of Lessor first had and obtained. If Lessee, or any one or more of the Lessees, if there be more than one, shall make an assignment for the benefit of creditors, or shall be adjudged a bankrupt, Lessor may terminate this lease, and in such event Lessee shall at once pay Lessor a sum of money equal to the entire amount of rent reserved by this lease for the then unexpired portion of the term hereby created, as liquidated damages.

4. LESSEE NOT TO MISUSE. Lessee will not permit any unlawful or immoral practice, with or without his knowledge or consent, to be committed or carried on in the Premises by himself or by any other person. Lessee will not allow the Premises to be used for any purpose that will increase the rate of insurance thereon, nor for any purpose other than that hereinbefore specified. Lessee will not keep or use or permit to be kept or used in or on the Premises or any place contiguous thereto any flammable fluids or explosives, without the written permission of Lessor first had and obtained. Lessee will not load floors beyond the floor load rating prescribed by applicable municipal ordinances. Lessee will not use or allow the use of the Premises for any purpose whatsoever that will injure the reputation of the Premises or of the building of which they are a part.

5. CONDITION ON POSSESSION. Lessee has examined and knows the condition of the Premises and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof, and no agreements or promises to decorate, alter, repair or improve the Premises, have been made by Lessor or his agent prior to or at the execution of this lease that are not herein expressed.

6. REPAIRS AND MAINTENANCE. Lessee shall keep the Premises and appurtenances thereto in a clean, sightly and healthy condition, and in good repair, all according to the statutes and ordinances in such cases made and provided, and the directions of public officers thereunto duly authorized, all at his own expense, and shall yield the same back to Lessor upon the termination of this lease, whether such termination shall occur by expiration of the term, or in any other manner whatsoever, in the same condition of cleanliness, repair and sightliness as at the date of the execution hereof, loss by fire and reasonable wear and tear excepted. Lessee shall make all necessary repairs and renewals upon Premises and replace broken globes, glass and fixtures with material of the same size and quality as that broken and shall insure all glass in windows and doors of the Premises at his own expense. If, however, the Premises shall not thus be kept in good repair and in a clean, sightly and healthy condition by Lessee, as aforesaid, Lessor may enter the same, himself or by his agents, servants or employees, without such entering causing or constituting a termination of this lease or an interference with the possession of the Premises by Lessee, and Lessor may replace the same in the same condition of repair, sightliness, healthiness and cleanliness as existed at the date of execution hereof, and Lessee agrees to pay Lessor, in addition to the rent hereby reserved, the expenses of Lessor in thus replacing the Premises in that condition. Lessee shall not cause or permit any waste, misuse or neglect of the water, or of the water, gas or electric fixtures.

7. ACCESS TO PREMISES. Lessee shall allow Lessor or any person authorized by Lessor free access to the Premises for the purpose of examining or exhibiting the same, or to make any repairs or alterations thereof which Lessor may see fit to make, and Lessee will allow Lessor to have placed upon the Premises at all times notices of "For Sale" and "For Rent", and Lessee will not interfere with the same.

8. NON-LIABILITY OF LESSOR. Except as provided by Illinois statute, Lessor shall not be liable to Lessee for any damage or injury to him or his property occasioned by the failure of Lessor to keep the Premises in repair, and shall not be liable for any injury done or occasioned by wind or by or from any defect of plumbing, electric wiring or of insulation thereof, gas pipes, water pipes or steam pipes, or from broken stairs, porches, railings or walks, or from the backing up of any sewer pipe or down-spout, or from the bursting, leaking or running of any tank, tub, washstand, water closet or waste pipe, drain, or any other pipe or tank in, upon or about the Premises or the building of which they are a part nor from the escape of steam or hot water from any radiator, it being agreed that said radiators are under the control of Lessee, nor for any such damage or injury occasioned by water, snow or ice being upon or coming through the roof, skylight, trap-door, stairs, walks or any other place upon or near the Premises, or otherwise, nor for any such damage or injury done or occasioned by the falling of any fixture, plaster or stucco, nor for any damage or injury arising from any act, omission or negligence of co-tenants or of other persons, occupants of the same building or of adjoining or contiguous buildings or of owners of adjacent or contiguous property, or of Lessor's agents or Lessor himself, all claims for any such damage or injury being hereby expressly waived by Lessee.

Page 2    No. 9-REC

9. RESTRICTIONS (SIGNS, ALTERATIONS, FIXTURES). Lessee shall not attach, affix or exhibit or permit to be attached, affixed or exhibited, except by Lessor or his agent, any articles of permanent character or any sign, attached or detached, with any writing or printing thereon, to any window, floor, ceiling, door or wall in any place in or about the Premises, or upon any of the appurtenances thereto, without in each case the written consent of Lessor first had and obtained; and shall not commit or suffer any waste in or about said premises; and shall make no changes or alterations in the Premises by the erection of partitions or the papering of walls, or otherwise, without the consent in writing of Lessor; and in case Lessee shall affix additional locks or bolts on doors or windows, or shall place in the Premises lighting fixtures or any fixtures of any kind, without the consent of Lessor first had and obtained, such locks, bolts and fixtures shall remain for the benefit of Lessor, and without expense of removal or maintenance to Lessor. Lessor shall have the privilege of retaining the same if he desires. If he does not desire to retain the same, he may remove and store the same, and Lessee agrees to pay the expense of removal and storage thereof. The provisions of this paragraph shall not however apply to Lessee's trade fixtures, equipment and movable furniture.

10. HEAT. Where building is equipped for the purpose, Lessor shall furnish to Lessee a reasonable amount of heat, from October 1st to May 1st, whenever in Lessor's judgment necessary for comfortable use of the Premises, during customary business hours (excluding Sundays and holidays), but not earlier than 8 a.m. nor later than 6 p.m. unless specifically stated herein. Lessor does not warrant that heating service will be free from interruptions caused by strike, accident or other cause beyond the reasonable control of Lessor, or by renewal or repair of the heating apparatus in the building. Any such interruption shall not be deemed an eviction or disturbance of Lessee's use and possession of Premises, nor render Lessor liable to Lessee in damages. All claims against Lessor for injury or damage arising from failure to furnish heat are hereby expressly waived by Lessee.

11. FIRE AND CASUALTY. In case the Premises shall be rendered untenantable by fire, explosion or other casualty, Lessor may, at his option, terminate this lease or repair the Premises within sixty days. If Lessor does not repair the Premises within said time, or the building containing the Premises shall have been wholly destroyed, the term hereby created shall cease and terminate.

12. TERMINATION; HOLDING OVER. At the termination of the term of this lease, by lapse of time or otherwise, Lessee will yield up immediate possession of the Premises to Lessor, in good condition and repair, loss by fire and ordinary wear excepted, and will return the keys therefor to Lessor at the place of payment of rent. If Lessee retains possession of the Premises or any part thereof after the termination of the term by lapse of time or otherwise, then Lessor may, at its option, within thirty days after termination of the term serve written notice upon Lessee that such holding over constitutes either (a) renewal of this lease for one year, and from year to year thereafter, at double the rental (computed on an annual basis) specified in Section 1, or (b) creation of a month to month tenancy, upon the terms of this lease except at double the monthly rental specified in Section 1, or (c) creation of a tenancy at sufferance, at a rental of ___150.00___ dollars per day, for the time Lessee remains in possession. If no such written notice is served then a tenancy at sufferance with rental as stated at (c) shall have been created. Lessee shall also pay to Lessor all damages sustained by Lessor resulting from retention of possession by Lessee. The provisions of this paragraph shall not constitute a waiver by Lessor of any right of re-entry as hereinafter set forth; nor shall receipt of any rent or any other act in apparent affirmance of tenancy operate as a waiver of the right to terminate this lease for a breach of any of the covenants herein.

13. LESSOR'S REMEDIES. If Lessee shall vacate or abandon the Premises or permit the same to remain vacant or unoccupied for a period of ten days, or in case of the non-payment of the rent reserved hereby, or any part thereof, or of the breach of any covenant in this lease contained, Lessee's right to the possession of the Premises thereupon shall terminate with or (to the extent permitted by law) without any notice or demand whatsoever, and the mere retention of possession thereafter by Lessee shall constitute a forcible detainer of the Premises; and if the Lessor so elects, but not otherwise, and with or without notice of such election or any notice or demand whatsoever, this lease shall thereupon terminate, and upon the termination of Lessee's right of possession, as aforesaid, whether this lease be terminated or not, Lessee agrees to surrender possession of the Premises immediately, without the receipt of any demand for rent, notice to quit or demand for possession of the Premises whatsoever, and hereby grants to Lessor full and free license to enter into and upon the Premises or any part thereof, to take possession thereof with or (to the extent permitted by law) without process of law, and to expel and to remove Lessee or any other person who may be occupying the Premises or any part thereof, and Lessor may use such force in and about expelling and removing Lessee and other persons as may reasonably be necessary, and Lessor may re-possess himself of the Premises as of his former estate, but such entry of the Premises shall not constitute a trespass or forcible entry or detainer, nor shall it cause a forfeiture of rents due by virtue thereof, nor a waiver of any covenant, agreement or promise in this lease contained, to be performed by Lessee. Lessee hereby waives all notice of any election made by Lessor hereunder, demand for rent, notice to quit, demand for possession, and any and all notices and demand whatsoever, of any and every nature, which may or shall be required by any statute of this state relating to forcible entry and detainer, or to landlord and tenant, or any other statute, or by the common law, during the term of this lease or any extension thereof. The acceptance of rent, whether in a single instance or repeatedly, after it falls due, or after knowledge of

any breach hereof by Lessee, or the giving or making of any notice or demand, whether according to any statutory provision or not, or any act or series of acts except an express written waiver, shall not be construed as a waiver of Lessor's rights to act without notice or demand or of any other right hereby given Lessor, or as an election not to proceed under the provisions of this lease.

14. RIGHT TO RELET. If Lessee's right to the possession of the Premises shall be terminated in any way, the Premises, or any part thereof, may, but need not (except as provided by Illinois statute), be relet by Lessor, for the account and benefit of Lessee, for such rent and upon such terms and to such person or persons and for such period or periods as may seem fit to the Lessor, but Lessor shall not be required to accept or receive any tenant offered by Lessee, nor to do any act whatsoever or exercise any diligence whatsoever, in or about the procuring of any care or diligence by Lessor in the reletting thereof; and if a sufficient sum shall not be received from such reletting to satisfy the rent hereby reserved, after paying the expenses of reletting and collection, including commissions to agents, and including also expenses of redecorating, Lessee agrees to pay and satisfy all deficiency; but the acceptance of a tenant by Lessor, in place of Lessee, shall not operate as a cancellation hereof, nor to release Lessee from the performance of any covenant, promise or agreement herein contained, and performance by any substituted tenant by the payment of rent, or otherwise, shall constitute only satisfaction pro tanto of the obligations of Lessee arising hereunder.

15. COSTS AND FEES. Lessee shall pay upon demand all Lessor's costs, charges and expenses, including fees of attorneys, agents and others retained by Lessor, incurred in enforcing any of the obligations of Lessee under this lease or in any litigation, negotiation or transaction in which Lessor shall, without Lessor's fault, become involved through or on account of this lease.

16. CONFESSION OF JUDGMENT. Lessee hereby irrevocably constitutes and appoints any attorney of any court of record in this State, to be his true and lawful attorney for him and in his name and stead, to enter his appearance in any suit or suits that may be brought in any court in this State at any time when any money is due hereunder for rent or otherwise, to waive the issuing of process and service thereof and trial by jury or otherwise, and to confess a judgment or judgments for such money so due and for costs of suit and for reasonable attorney's fees in favor of Lessor, and to release all errors that may occur or intervene in such proceedings, including the issuance of execution upon any such judgment, and to stipulate that no writ of error or appeal shall be prosecuted from such judgment or judgments, nor any bill in equity filed, nor any proceedings of any kind taken in law or equity to interfere in any way with the operation of such judgment or judgments or of execution issued thereon and to consent that execution may immediately issue thereon.

17. LESSOR'S LIEN. Lessor shall have a first lien upon the interest of Lessee under this lease, to secure the payment of all moneys due under this lease, which lien may be foreclosed in equity at any time when money is overdue under this lease; and the Lessor shall be entitled to name a receiver of said leasehold interest, to be appointed in any such foreclosure proceeding, who shall take possession of said premises and who may relet the same under the orders of the court appointing him.

18. REMOVAL OF OTHER LIENS. In event any lien upon Lessor's title results from any act or neglect of Lessee, and Lessee fails to remove said lien within ten days after Lessor's notice to do so, Lessor may remove the lien by paying the full amount thereof or otherwise and without any investigation or contest of the validity thereof, and Lessee shall pay Lessor upon request the amount paid out by Lessor in such behalf, including Lessor's costs, expenses and counsel fees.

19. REMEDIES NOT EXCLUSIVE. The obligation of Lessee to pay the rent reserved hereby during the balance of the term hereof, or during any extension hereof, shall not be deemed to be waived, released or terminated, nor shall the right and power to confess judgment given in paragraph 16 hereof be deemed to be waived or terminated by the service of any five-day notice, other notice to collect, demand for possession, or notice that the tenancy hereby created will be terminated on the date therein named, the institution of any action of forcible detainer or ejectment or any judgment for possession that may be rendered in such action, or any other act or acts resulting in the termination of Lessee's right to possession of the Premises. The Lessor may collect and receive any rent due from Lessee, and payment or receipt thereof shall not waive or affect any such notice, demand, suit or judgment, or in any manner whatsoever waive, affect, change, modify or alter any rights or remedies which Lessor may have by virtue hereof.

20. NOTICES. Notices may be served on either party, at the respective addresses given at the beginning of this lease, either (a) by delivering or causing to be delivered a written copy thereof, or (b) by sending a written copy thereof by United States certified or registered mail, postage prepaid, addressed to Lessor or Lessee at said respective addresses in which event the notice shall be deemed to have been served at the time the copy is mailed.

21. MISCELLANEOUS. (a) Provisions typed on this lease and all riders attached to this lease and signed by Lessor and Lessee are hereby made a part of this lease.

(b) Lessee shall keep and observe such reasonable rules and regulations now or hereafter required by Lessor, which may be necessary for the proper and orderly care of the building of which the Premises are a part.

No. 9-REC

(c) All covenants, promises, representations and agreements herein contained shall be binding upon, apply and inure to the benefit of Lessor and Lessee and their respective heirs, legal representatives, successors and assigns.

(d) The rights and remedies hereby created are cumulative and the use of one remedy shall not be taken to exclude or waive the right to the use of another.

(e) The words "Lessor" and "Lessee" wherever used in this lease shall be construed to mean Lessors or Lessees in all cases where there is more than one Lessor or Lessee, and to apply to individuals, male or female, or to firms or corporations, as the same may be described as Lessor or Lessee herein, and the necessary grammatical changes shall be assumed in each case as though fully expressed. If there is more than one Lessee the warrant of attorney in paragraph 16 is given jointly and severally and shall authorize the entry of appearance of, and waiver of issuance of process and trial by jury by, and confession of judgment against any one or more of such Lessees, and shall authorize the performance of every other act in the name of and on behalf of any one or more of such Lessees.

21. SEVERABILITY. If any clause, phrase, provision or portion of this lease or the application thereof to any person or circumstance shall be invalid or unenforceable under applicable law, such event shall not affect, impair or render invalid or unenforceable the remainder of this lease nor any other clause, phrase, provision or portion hereof, nor shall it affect the application of any clause, phrase, provision or portion hereof to other persons or circumstances.

WITNESS the hands and seals of the parties hereto, as of the Date of Lease stated above.    Please print or type name(s) below signature(s).

LESSEE: _____(SEAL)    LESSOR: _____(SEAL)

_____(SEAL)    _____(SEAL)

ASSIGNMENT BY LESSOR

On this _____, 20____, for value received, Lessor hereby transfers, assigns and sets over to _____, all right, title and interest in and to the above Lease and the rent thereby reserved, except rent due and payable prior to _____, 20____.

_____(SEAL)    _____(SEAL)

_____(SEAL)    _____(SEAL)

GUARANTEE

On this _____, 20____, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned Guarantor hereby guarantees the payment of rent and performance by Lessee, Lessee's heirs, executors, administrators, successors or assigns, of all covenants and agreements of the above Lease.

_____(SEAL)    _____(SEAL)

_____(SEAL)    _____(SEAL)

## RIDER TO LEASE

23. OPTION TO RENEW. Lessee shall have the right, subject to the provisions hereinafter provided, to renew the term for five (5) periods of five (5) years on the terms and provisions of this Section provided:

   A. This lease is in full force and effect and Lessee is not in default in the performance of any of the terms, covenants and conditions herein contained, at the time of exercise of the right of renewal and at the time set for commencement of each renewal term, but Lessor shall have the right at its sole discretion to waive this condition;

   B. That each renewal term shall be upon the same terms, covenants and conditions as provided in this lease; provided, however, monthly rent for the renewal term shall be as follows:

   $ per lease   for the first renewal term
   $ per lease   for the second renewal term
   $ per lease   for the third renewal term
   $ per lease   for the fourth renewal term
   $ per lease   for the fifth renewal term

   C. That Lessee shall exercise its right to each renewal term, if at all, by notifying Lessor in writing of its election to exercise the right to renew the term at least six (6) months prior to the expiration of the initial term or the expiration of any prior renewal term.

24. OPTION TO PURCHASE.

   (a) So long as Lessee is not in default hereunder, Lessor hereby grants to Lessee a nonassignable option to purchase the Premises during the original term of the lease at a price of One Million Two Hundred and No/100 Dollars ($1,200,000.00), during the first renewal term at a price of One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00) and during subsequent renewal terms of a price determined by taking the mathematical average of two independent, certified appraisals on the value of the property plus all improvements, prepared by certified appraisers mutually agreed to by both Lessee and Lessor. Said option shall be exercised by written notice to Lessor from Lessee given at least six (6) months prior to the time Lessee intends to purchase the Premises.

   (b) If Lessee's option hereunder is exercised, the following closing procedure shall apply:

51732.1

(i) The closing date for the sale of the Premises to Lessee shall be on the date on which the term expires. Payment of the purchase price and the delivery of the deed (the "Closing") shall be made at such place as the parties agree. At the request of either party, the Closing shall be effected through a deed and money escrow, the cost of which escrow shall be borne equally by Lessor and Lessee. The purchase price shall be payable to Lessor on the Closing date in cash or by certified or cashier's check, together with delivery of evidence of part purchase money indebtedness, if applicable, upon delivery of the deed to Lessee and performance of Lessor's other obligations as set forth herein.

(ii) The conveyance of the Premises shall be made by recordable warranty deed to Lessee (or its designee) and other documentation necessary to transfer good and marketable fee simple title to the Premises to Lessee (or by good and sufficient Assignment of Beneficial Interest sufficient to transfer good and marketable beneficial interest to the Premises to Lessee, as applicable), subject only to (A) the lien of current general real estate taxes and special assessments not then due and payable; (B) any acts or doings caused or suffered by Lessee; (C) private, public and utility easements and roads and highways, if any; (D) covenants, conditions and restrictions of record; (E) party wall rights and agreements, if any; and (F) existing leases and tenancies ("Permitted Title Exceptions").

(iii) Lessor shall deliver or cause to be delivered to Lessee, not later than twenty (20) days prior to the Closing, as evidence of Lessor's title to the Premises, a commitment for an ALTA Form B owner's title insurance policy (with extended coverage over all general exceptions) in the aggregate amount of the purchase price as provided hereunder and an ALTA/ACSM-Class A survey showing no encroachments by or from the land onto any adjacent property, no encroachments onto the Land by any adjacent property and no violation of any recorded building lines, restrictions or easements affecting the Premises. Such survey shall be dated no more than thirty (30) days prior to the date of Closing and shall be certified to Lessee's lender and Lessee. Such title commitment shall be issued by a title company mutually agreed upon by both parties, shall name Lessee or its designee as the proposed insured and show title to the Premises in Lessor, subject only to (a) the Permitted Title Exceptions, and (b) other title exceptions pertaining to liens or encumbrances of a definite or ascertainable amount which may be removed at Closing by the payment of money, but not to exceed the cash portion of the purchase price otherwise payable to Lessor at Closing, and which Lessor shall so remove or cause to be removed concurrently with the Closing. In addition to the foregoing, Lessor shall remove or cause to be

517321                              2

   removed, concurrently with the Closing, any mortgage and any other related security instrument.

  (iv) The payment of all prorations, transfer taxes, title insurance charges, escrow fees, recording fees and other expenses, fees and charges shall be made by the party from whom such payment is due in accordance with statutory requirements or in accordance with the custom at the time of the Closing for sales of properties similar to the Premises.

 (c) If Lessor refuses to enter into the contract within the time required therefor, and provided Lessee has validly executed its option to purchase in full compliance with the terms hereof, Lessee shall be entitled to all remedies available at law or in equity with respect to Lessor's refusal to enter into the contract, including, without limitation, damages and specific performance.

25. TAXES. Lessee shall pay to Lessor during the term, in addition to the rent specified herein, all taxes and assessments against the land, buildings or improvements that are levied or assessed by any lawful authority during each calendar year, including without limitation all personal property taxes of Lessor relating to Lessor's personal property used or useful in connection with the operation and maintenance of the Premises, and all other governmental charges, general and special, ordinary and extraordinary, foreseen as well as unforeseen, of any kind and nature whatsoever, or other tax, however described, which is levied or assessed by the United States of America or the state in which the Premises is located or any city, municipality or political subdivision thereof, against Lessor or all or any part of the Premises and payable during the respective calendar year (such taxes and assessments being hereinafter called "Taxes"). Taxes for any partial calendar year during the term shall be prorated, based upon the portion of such calendar year which is within the term. Taxes shall be paid monthly, in advance, in equal installments, in an amount estimated by Lessor from time to time. Within a reasonable time after receipt of all final tax bills for any calendar year, Lessor shall furnish Lessee with a written statement of the actual amount of Taxes for such year. In the event the total amount of monthly installments paid by Lessee pursuant to this Section 25 does not equal the sum due from Lessee as shown on such statement, then, in case of underpayment by Lessee, Lessee shall pay to Lessor any deficiency upon receipt of such statement, or, in case of overpayment by Lessee, Lessor shall credit Lessee's next monthly rental in the amount of any such overpayment (or refund to Lessee if overpayment has occurred during the final year of the lease), as the case may be. A copy of a tax bill submitted by Lessor to Lessee shall be sufficient evidence of the amount of Taxes to which such bill relates.

51732.1

3